IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| HONORABLE EVA ARAYA RAMIREZ<br><br>PLAINTIFF<br><br>v.<br><br>OFFICE OF THE COURTS' ADMINISTRATION; HONORABLE LIANA FIOL MATTA; HONORABLE ISABEL LLOMPART ZENO; HONORABLE SONIA I. VELEZ COLON<br><br>DEFENDANTS | CIVIL NO:  2014 -<br><br>PLAINTIFF DEMANDS TRIAL BY JURY |

## COMPLAINT

**TO THE COURT:**

**COMES NOW PLAINTIFF**, **EVA ARAYA RAMIREZ**, through the subscribing Attorneys**,** and very respectfully alleges and prays:

### I.   STATEMENT OF THE CASE

1. **Honorable Eva Araya Ramírez** (**Plaintiff**) brings forth this action against the **Office of Courts' Administration** (**OCA**) to redress employment discrimination on the basis of Plaintiff's disability, failure to provide reasonable accommodations, and retaliatory actions all in violation of the American with Disabilities Act, 42 U.S.C. §§ 12101 et seq., (ADA). Plaintiff further alleges that defendant's illegal actions violated her right to dignity, reputation and honor under sections 1, 8 and 16 of Article II of the Constitution of the Commonwealth of Puerto Rico and also seeking redress under Article 1802 of the Puerto Rico Civil Code, 31 LP.R.A. 5141.

2. Due to the discriminatory, illegal and willful actions of the OCA, plaintiff seeks compensatory damages for deprivation of rights, mental and emotional suffering and punitive

damages. State and federal claims hereinafter set forth derive from a common nucleus of operative facts.

## II.     JURISDICTION

3. This complaint is brought under the provisions of the ADA. This Court has jurisdiction over this complaint pursuant to 28 U.S.C. §1331 and §1343 (a)(3).

4. Supplemental jurisdiction for the causes of action invoked under the Constitutions and the laws of the Commonwealth of Puerto Rico is invoked under 28 U.S.C. §1367.

5. Venue is appropriate in the Court pursuant to 28 U.S.C. §1391, as this action is brought in the judicial district in which the discriminatory, retaliatory, and unlawful actions against Plaintiff occurred.

## III.     THE PARTIES

6. Plaintiff is of legal age, a citizen of the United States of America and a resident of Carolina, Puerto Rico. At the present time, she holds the position of Superior Judge at the San Juan Court of First Instance.

7. Defendant OCA is a public agency charged with administering Puerto Rico's judicial system with capacity to sue and be sued.

8. Defendant **HONORABLE LIANA FIOL MATTA** (LFM) is of legal age and resident of Guaynabo, Puerto Rico. She is presently the **Chief Justice** of the Supreme Court of Puerto Rico and therefore responsible for directing the administration of the courts. Defendant LFM has failed to provide plaintiff with her reasonable accommodation needs. Defendant LFM is being brought before this Court in both her individual and official capacities for the violations of plaintiff's rights.

9. Defendant HONORABLE SONIA I. VELEZ COLON (SVC) is of legal age and a resident of Guaynabo, Puerto Rico.  She is presently the Administrative Director of the OCA and is in charge of implementing the public policy established by the Chief Justice.  She was responsible for considering plaintiff's claim for reasonable accommodation, a task delegated to her by former Chief Justice, Federico Hernández Denton, and she unlawfully denied the same, intentionally discriminating against plaintiff and taking retaliatory actions. Defendant SVC is being brought before this Court in both her individual and official capacities for the violations of plaintiff's rights.

10. Defendant HONORABLE ISABEL LLOMPART ZENO (ILZ) is of legal age and resident of Guaynabo, Puerto Rico.  She is presently the Regional Administrative Director of the San Juan Superior Court.  She unlawfully denied plaintiff's request for reasonable accommodations, intentionally discriminating against plaintiff and taking retaliatory actions. Defendant ILZ is being brought before this Court in both her individual and official capacities for the violations of plaintiff's rights.

### III.   THE FACTS

11. Plaintiff has been diagnosed with Fibromyalgia since 2001.  Fibromyalgia is a common musculoskeletal syndrome characterized by generalized pain, irregular sleep patterns, fatigue, and a wide range of secondary symptoms.  The disease has no cure.

12. As a result of her condition, Plaintiff suffers from chronic pain and fatigue, absence of stamina, brain fog, among other symptoms, which substantially limit her ability to engage in one or more major life functions.

13. In 1995, Plaintiff was appointed as Superior Judge for the General Court of Justice in Puerto Rico, which position she held until 2007.  During said term, and following

Plaintiff's request for reasonable accommodations due to her condition, the OCA assigned Plaintiff to the Carolina Superior Court, which is close to her residence in said municipality, presiding a Civil Law courtroom, and was given two ergonomic chairs, one for the office and one for the courtroom.

14.     On or about June 2nd, 2010, plaintiff was appointed for the second time as Superior Judge, which position she continues to hold at the time of the filing of this complaint.

15.     Around the time the Judicial Academy started, from June 3rd, 2010 to July 16, 2010, Plaintiff again requested the OCA, through Mrs. Anabel Solá, Director of the Office of Judicial Support, the same reasonable accommodations that the OAC had already provided for and acknowledged during her previous term as Superior Judge: to be assigned to the Carolina Superior Court next to her home, a Civil Law courtroom because she was already familiarized with the subject matters and proceedings from her first tenure, and ergonomic office equipment. However, Plaintiff's claim fell on deaf ears. She was assigned to the Humacao Superior Court, which is a long commute from her home, to preside the Minors and Family integrated courtrooms. Interestingly, at that time there was an available position at the Carolina Superior Court since former Judge Carolina Lydia Couvertier was retiring, but the position was never offered to Plaintiff.

16.     On or about June 25, 2010, Plaintiff wrote a letter to the former Chief Justice of the Supreme Court of Puerto Rico, Federico Hernández Denton (FHD), regarding her reasonable accommodation request, but there was no answer. Instead, on July 6, 2010, Plaintiff received a written order of FHD assigning her to the Humacao Superior Court, still far from the plaintiff's home.

17. On or about July 11, 2010, Plaintiff wrote a second letter to FHD complaining about her ignored requests for reasonable accommodations and her assignment to the Humacao Court.

18. On July 14, 2010, Plaintiff again wrote an email to FHD where she explained everything she had done regarding her reasonable accommodation request since her appointment. However, FHD only answered with cynical remarks that God would help her with her new assignment.

19. On or about July 20, 2010, SVC, answered Plaintiff's email to FHD stating that she had to report to her duties and that her assignment to the Humacao Superior Court was obligatory, making reference to her judge application from 2007 where Plaintiff had stated she was available to move to another municipality if needed.  However, Plaintiffs personal circumstances that would have made the move possible had changed since then.

20. Notwithstanding plaintiff's need for reasonable accommodation, she continued to work and perform the duties assigned to her for two years, so much so that she, along her fellow justices, caused her judicial district to have one of the best case statistics.  However, the long commute was beginning to take a toll on her health, worsening her fibromyalgia symptoms.

21. On or about February 14, 2012, Plaintiff wrote to SVC and FHD regarding her designation as the President of the Local Commission of Humacao.  Plaintiff requested to be released from said appointment and reiterated her reasonable accommodation requests. However, once again Plaintiff did not receive an answer.

22. Given defendants refusal to give due consideration to Plaintiff's need for reasonable accommodation, on or about February 27, 2012, Plaintiff wrote to FDH accompanying a medical certification of her condition.

23. On or about March 1st, 2012, Plaintiff wrote to FDH on the occasion of his congratulating remarks for the excellent judicial statistics of the Humacao Superior Court where she reiterated her need to be excused from her designation as the President of the Local Commission of Humacao. FDH responded that they are still considering it and, in the meanwhile, she must comply with her electoral obligations. Thereafter, on or about March 6, 2012, Plaintiff wrote to both FHD and SVC, restating her disability and the fact that all of her medical appointments were in the San Juan area.

24. On or about March 20, 2012, SVC signed the letter releasing Plaintiff from her designation as the President of the Local Commission of Humacao. Interestingly enough, the letter states that the cause of her relief from said position was that she suffered from a type of severe or incapacitating disease certified by a medical practitioner. However, no steps were taken regarding her reasonable accommodation needs.

25. On or about March 23, 2012, plaintiff wrote an email to FDH regarding her unattended request for reasonable accommodations and reiterated that her condition was not curable. Plaintiff stated that her request to be assigned to the Carolina Superior Court was not onerous, since there was an available vacancy at said courthouse following the promotion of a Superior Court judge to the Appellate Court. In fact, at the time plaintiff was sworn in as Judge in 2010, there were two available vacancies at the Carolina Superior Court, none of which were offered to plaintiff.

26. On or about March 25, 2012, Supreme Court Associate Judge, Honorable Luis Estrella required that plaintiff's claims be not left unattended because there was a medical condition that had motivated her release from her designation as the President of the Local Commission.

27.     On or about June 12, 2012, FDH wrote to Plaintiff referring to her request for reasonable accommodation as a transfer request and that her workload was adequate given she had excellent judicial statistics for her district.  On June 17, 2012, Plaintiff replied that it was not a request for a transfer but a reasonable accommodation request due to her medical condition.  Plaintiff further stated that he was committing an injustice and that he had all the elements to finally decide on her claim.

28.     On or about July 20, 2012, SVC sent Plaintiff an email regarding her June 17, 2012 email to FDH requesting her to resubmit all the medical evidence regarding her need for reasonable accommodation.

29.     On or about August 6, 2012, Plaintiff once again sent an email directly to FDH explaining her situation and personal circumstances which made her reasonable accommodation request an urgency.  Plaintiff explained that ever since she became a widow, life had become more onerous on her health for she now had the pressure of taking care of all the necessities on her own.  She also explained that on her first tenure as judge, she already had spent a year working in Ponce, and later 11 years in Carolina.  Now, on her second tenure, she had been working in Humacao for two years and there were vacancies in the Carolina Superior Court.

30.     On that same date, FHD replied to plaintiff that he had sent her previous emails to the attention of SVC, and that she should continue to direct all communications regarding her reasonable accommodation to her.  He stated that once plaintiff submitted the medical evidence required, they would make a decision regarding her request, to which plaintiff replied that she had already given them the medical evidence justifying her reasonable accommodation, but that she could get another one from her rheumatologist.

31. On or about August 20, 2012, SVC replies to Plaintiff's August 6, 2012 email to FHD stating that from that moment on plaintiff should address her directly concerning her claims by instructions of FHD and to send her more evidence on her condition.

32. On September 5, 2012, Plaintiff submitted via email a new medical certification from her rheumatologist, Salvador Vilá, M.D, justifying her need for reasonable accommodations. Salvador Vilá has been treating plaintiff's condition for 11 years. The medical certification explained that patients with fibromyalgia are capable of working by making some adjustments to their daily life, among which are more time to rest and less travel time to be able to do their work adequately. In plaintiff's case, she suffers from chronic generalized pain, severe fatigue and absence of stamina. Therefore, Dr. Vilá has recommended plaintiff to request a transfer from Humacao to Carolina because less travel time will give her more time to rest, which would mean less pain and more stamina, consequently reducing her absences from work. This transfer will also minimize the risk of automobile accident due to excess fatigue, and it will allow her to take medicines for treatment that may cause sleepiness, which she cannot take because of her long travel time.

33. On September 19, 2012 SVC replied to plaintiff's September $5^{th, 2012}$ email to FDH stating that the newly appointed judges which plaintiff pointed out were being assigned to Carolina had gone to other districts.

34. Much to plaintiff's surprise, on or about March 1st, 2013, Plaintiff was transferred from the Humacao Superior Court to the San Juan Superior Court by administrative order. This was done in utter violation of plaintiff's right to reasonable accommodation and without any justification. Interestingly enough, at that time there were 6 vacancies in the Carolina Superior

Court none of which were offered to plaintiff. Instead the OCA assigned them to newly appointed judges.

35. In view of the defendant's refusal to give due consideration to plaintiff's request, on March 11, 2013, plaintiff filed administrative complaint before the EEOC. Defendants responded to plaintiff's assertion of her legal rights with discriminatory and retaliatory actions, monitoring her activities closely and by assigning her more duties, including the presiding of another courtroom, the San Juan Juvenile Drug Court.

36. On March 21, 2013, the EEOC issued a Letter of Determination stating plaintiff should be given reasonable accommodation and that defendant OAC had until June 27, 2013 for conciliation. However the OAC let the term expire without taking any conciliatory action.

37. In the meanwhile, Plaintiff continued to comply with her work requirements at the San Juan Court where she continued to preside the Court of Minors and Child Abuse and, as a new addition, the San Juan Juvenile Drug Court. Notwithstanding, the long commute to the San Juan Superior Court from Carolina continued to take a toll on plaintiff's health, causing her to get extremely fatigued, which in turn caused her to be late for work. Therefore, on several occasions plaintiff manifested to ILZ the need for a flexible work time.

38. During a meeting held on March 6, 2014, defendant ILZ told Plaintiff that she could not give her reasonable accommodation because SVC said judges do not possess that right.

39. On May 12, 2014, the EEOC notified Plaintiff the Right to Sue Letter.

40. On or about June 30, 2014, Plaintiff was notified by ILZ that she was being reassigned to preside the Civil Court, in Room 902. She had been presiding the Court of Minors, Child Abuse and the San Juan Juvenile Drug Court for four years now and had become very familiar with the subject matter and manner of proceedings. As part of her reasonable

accommodation petition, plaintiff had requested that she continue to preside over the same subject matter she had in Humacao and later San Juan, to which she had become accustomed to and could manage within the limits of her condition. Any change could put too much stress over plaintiff, therefore worsening her symptoms and interfering with her job.

41. On that same date, Plaintiff sent an email to defendant SVC regarding her reasonable accommodation needs on the wake of her re-assignment.

42. Thereafter, on or about July 9, 2014, Plaintiff wrote to defendant SVC requiring her to consider her claims because the term to file a complaint was about to expire. On July 10, 2014, SVC replied to Plaintiff that she would call her, but she never did.

43. Around that same time, plaintiff had asked defendant ILZ to have the same law clerk that was working in the courtroom 902 where she was reassigned to, but she denied her request. Plaintiff asked her why they wouldn't give her the law clerk but she was not responsive.

44. On July 13, 2014 Plaintiff wrote to SVC regarding other matters and she replied she would call her.

45. Around this time, it came to plaintiff's attention that Judge Isidro García-Pesquera who is now substituting plaintiff in the Court of Minors and Child Abuse, was stating for the record that, as per instructions of defendant ILZ, plaintiff would be no longer available to continue presiding over the final proceedings already commenced by plaintiffs in child abuse cases for she was "relieved" from her duties. This certainly is an affront to plaintiff's honor and reputation for this term is always used following a judge's removal for the wrong reasons.

46. On or about July 16, 2014, plaintiff sent an email to defendant ILZ capturing her current situation and how the sudden change has affected her health. She also requested ILZ to explain why did she give instructions to Judge Isidro to state for the record that she was "being

relieved" from her duties regarding the final proceedings with the child abuse cases and why they wouldn't assign to her the law clerk she was requesting, among other matters. Defendant ILZ replied the next day ignoring plaintiff's requests and/or justifying her actions.

47. Plaintiff's sudden removal from the Court of Minors, Child Abuse and the San Juan Juvenile Court to begin working in a Civil Law courtroom has had an enormous impact on her health. At first, defendant ILZ told her plaintiff would only have about 200 cases assigned to her and they were assigning her eviction cases, which would be substituted for contentious matters. But reality struck plaintiff with more cases than what she was originally assigned to, including contentious matters. What is worse, plaintiff's current courtroom does not even have air-conditioning.

48. The conditions at work are adverse to plaintiff's health and otherwise intolerable. As a result, her medical condition has aggravated, as plaintiff is suffering from too much stress, anxiety, depression and severe fatigue.

49. These actions were taken in retaliation for Plaintiff's assertion of her rights pursuant to the laws prohibiting discrimination.

50. As a result of the events described herein, the plaintiff has suffered considerable damages, significant emotional and physical sufferings, as well as aggravation of her medical conditions.

51. Plaintiff also suffered damage to her reputation as well as an affront to her dignity as a human being.

52. Plaintiff's July 16, 2013 email communications to defendant ILZ was also sent to defendant LFM, which until the filing of this complaint has failed to show any steps towards

giving due consideration to plaintiff's claim and ultimately grant plaintiff her right to a reasonable accommodation.

### IV.     FIRST CAUSE OF ACTION

53. The allegations contained in paragraphs 11 through 52 are realleged as if fully incorporated herein.

54. The events described were taken based on discriminatory attitude with respect to plaintiff's disability and the perception of the extent thereof.

55. The OCA failed to provide reasonable accommodation and refused to engage in process to facilitate and comply with plaintiff's accommodation needs.  A hostile environment was created based on plaintiff's disability and retaliatory actions were taken against her.

56. All of the above constitute illegal discrimination in violation of the ADA provisions, relating to discrimination, failure to provide reasonable accommodation and retaliation, for which the plaintiff is entitled to injunctive relief and compensatory damages.

57. The defendants' actions alleged herein were taken with malice and/or with reckless indifference to plaintiff's federally protected rights, entitling plaintiff to punitive damages.

### V.     SECOND CAUSE OF ACTION

**58.** The allegations contained in paragraphs 11 through 52 are realleged as if fully incorporated herein.

59. All of the above constitute illegal disability discrimination in violation of the laws of Puerto Rico, specifically **Act Nos. 44, 88, 100, 115,** for which the plaintiff is entitled to compensatory damages, equitable and declaratory relief, and costs, interests and attorney fees.

60. Under the law of Puerto Rico, plaintiff is also entitled to a doubling of the above monetary amounts.

## VI.   THIRD CAUSE OF ACTION

61. The allegations contained in paragraphs 11 through 52 are realleged as if fully incorporated herein.

62. The actions described herein constitute a violation of plaintiff's right to dignity, reputation and honor, as well as bodily and human integrity in the workplace, as established by Article II, §§1,8, and 16, entitling plaintiff to compensatory damages for her sufferings caused thereby.

## VII.   FOURTH CAUSE OF ACTION

**63.** The allegations contained in paragraphs 11 through 52 are realleged as if fully incorporated herein.

64. Defendants have further violated plaintiff's rights under Puerto Rico's Civil Code, article 1802, 31 LPRA §5141.

65. Plaintiff is entitled to compensatory and economic damages as she has suffered by defendant's discriminatory employment practices against her in violation of her constitutional rights.

## T.R.O. AND PRELIMINARY INJUNCTION

**66.** The allegations contained in paragraphs 11 through 52 are realleged as if fully incorporated herein.

67. Plaintiff, pursuant to Rule 65 of the Federal Rules of Civil Procedure request this Court issue a temporary restraining order (TRO) against the defendants.  A TRO is necessary to halt defendant's constitutional violations against the plaintiff.

68. The immediate issuance of the TRO requested by the plaintiff will maintain the status quo and prevent further injury pending a preliminary injunction hearing.

69. Plaintiff is likely to succeed on the merits of the underlying case. The defendant's actions, as herein above state, are in violation of the ADA and Article II, sections 1, 8 and 16 of the Constitution of the Commonwealth of Puerto Rico. See **Arroyo v. Rattan Specialties, Inc.**, 117 D.P.R. 35, 64 (1986).

70. The balance of hardship weighs decidedly in plaintiff's favor, for there is a significant, irreversible harm to her if the defendants are not enjoined and precluded from their discriminating conduct and illegal practices against the plaintiff.

71. Plaintiff will suffer irreparable injury if the TRO and preliminary injunction are not issued, for she has no other remedy at hand in order for defendants to reinstate in her previous position where she was presiding the Court of Minors, Child Abuse, and the San Juan Juvenile Drug Court, and to subject her to any more changes which continue to affect her fibromyalgia condition.

72. Plaintiff has no plain, speedy and adequate remedy at law.

73. As herein stated, the public interest will be best served by the issuance of a TRO and a preliminary injunction.

74. The equities favor the issuance of a TRO and a preliminary injunction.

75. Issuance of a TRO and preliminary injunction will preserve the status quo pending a trial on the merits.

**PRAYER FOR RELIEF**

**WHEREFORE,** plaintiff respectfully requests this court:

1. Declare that the actions of the defendants were discriminatory and otherwise in violation of the ADA and Puerto Rico laws and regulations prohibiting discrimination against disabled individuals and requiring reasonable accommodation;

2. Issue preliminary and permanent injunctive relief, including but not limited to the following:

(a) reinstate the plaintiff to her position previous position where she was presiding the Court of Minors, Child Abuse, and the San Juan Juvenile Drug Court and an immediate transfer to the Carolina Superior Court, as well as any other need for reasonable accommodation her medical condition may require.

(b) enjoining defendants, their agents, successors, employees and those acting in concert with them from engaging in practices of disability discrimination

(c) enjoining the defendants from taking any retaliatory measures against the Plaintiff for her complaints of disability discrimination; and

3. Award the plaintiff with actual damages in excess of $1,000,000.

4. Award the plaintiff a doubling of the above amounts, for an additional $2,000,000.

6. Award the plaintiff the costs and expenses of this action, together with reasonable attorneys' fees.

7. The issuance of a preliminary injunction and a permanent injunction, ordering defendants their immediate cessation of their unconstitutional and illegal practices and reinstatement of all duties and responsibilities of the plaintiff to her prior position as well as an immediate transfer to the Carolina Superior Court.

8. Any other relief the Court may deem just and equitable.

**RESPECTFULLY SUBMITTED.**

In the Capital City of San Juan, Puerto Rico, this 11th day of August of the year 2014.

                        **By: /s/ PETER JOHN PORRATA**
                             #128901

                        **/s/ PRISCILLA M. RIVERA RODRIGUEZ**
                             #230608

Law Offices of
**PETER JOHN PORRATA**
Capital Center Building
South Tower/Suite 602
239 Arterial Hostos Avenue
San Juan, PR 00918-1476
**email@peterjohnporrata.com**
**priscillam.rivera@gmail.com**
T: 787.763.6500
F: 787.763.4566