IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**HON. EVA ARAYA-RAMIREZ,**

Plaintiff,

v.

**OFFICE OF THE COURTS
ADMINISTRATION, et al.,**

Defendants.

Civil No. 14-1619 (DRD)

<u>**OPINION AND ORDER**</u>

Honorable Eva Araya-Ramirez ("Plaintiff" or "Araya-Ramirez") filed an *Amended Complaint* on December 3, 2014 (Docket No. 12) against Defendants Office of the Courts Administration ("OCA"), Hon. Liana Fiol-Matta, Hon. Isabel Llompart-Zeno, and Hon. Sonia I. Velez-Colon, all in their official and personal capacities, alleging employment discrimination and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Additionally, Plaintiff brings forth claims pursuant to sections 1, 8, and 16 of Article II of the Constitution of the Commonwealth of Puerto Rico for alleged violations of Plaintiff's right to dignity, reputation, and honor and under Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141.

I.   **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

In 1995, Plaintiff was appointed as Superior Judge for the General Court of Justice in Puerto Rico, a position she occupied until 2007.  During her term in office, Plaintiff was assigned to the Carolina Superior Court, which is in close proximity to her residence, where she was assigned to a Civil Law courtroom.

In 2001, Plaintiff was diagnosed with Fibromyalgia, "a common musculoskeletal syndrome characterized by general pain, irregular sleep patterns, fatigue, and a wide range of secondary symptoms."  Docket No. 12, at ¶ 11.  As a result, Plaintiff constantly suffers from "chronic pain and fatigue, absence of stamina, brain fog, severe headaches, pain in neck, back, shoulders, legs, and feet," among other symptoms.  *Id*. at ¶ 12.  These symptoms adversely affect Plaintiff's ability to concentrate, sleep, and work for long periods of time, and are exacerbated by stress and excess fatigue.

On or about June 2, 2010, Plaintiff was once again appointed Superior Judge, the position she currently holds.  Immediately after being appointed, Plaintiff requested the OAC, through Anabel Solá, Director of the Office of Judicial Support, the same arrangement she had during her first tenure as Superior Judge: to be assigned to a Civil Law courtroom in the Carolina

Superior Court and to be supplied with ergonomic office equipment.

Notwithstanding her request, Plaintiff was assigned to the Humacao Superior Court to preside over the Minors and Family integrated courtrooms.  At the time, there was an open position at the Carolina Superior Court, as former Judge Carolina Lydia Couvertier was retiring.

On or around June 25, 2010, Plaintiff transcribed a letter to the Hon. Federico Hernández Denton, the former Chief Justice of the Supreme Court of Puerto Rico, regarding her reasonable accommodation requests, to no avail.  On July 6, 2010, Plaintiff was formally advised that she would remain assigned to the Humacao Court.

On July 11, 2010, Plaintiff wrote a second letter to Judge Hernández Denton explaining her situation and emphasizing that her reasonable accommodation requests had gone unheeded.

On July 14, 2010, Plaintiff wrote an email to Judge Hernández Denton once again detailing her efforts to be assigned to the Carolina Court.  According to Plaintiff, she received a non-response from Hon. Judge Hernández Denton, who stressed that God would help her in her new assignment.

On July 20, 2010, Defendant Sonia Vélez Colon responded to the email Plaintiff had sent to Judge Hernández Denton asserting that Plaintiff's assignment to the Humacao Court was obligatory.

Defendant Vélez Colon referenced Plaintiff's 2007 application, wherein she stated that she was willing to work at another municipality if needed.

During the following two years, Plaintiff performed her functions in Humacao.  However, the lengthy commute eventually started taking its toll on Plaintiff's health and her Fibromyalgia symptoms began to worsen.

On or around February 14, 2012, Plaintiff wrote to Sonia Vélez Colon and Judge Hernández Denton regarding her designation as the President of the Local Commission of Humacao.  Plaintiff requested to be released from her designation as President of the Local Commission of Humacao and requested, once again, a transfer to Carolina.  No answer was received.

Over the course of the following weeks, Plaintiff wrote to Hon. Judge Hernández Denton and Sonia Vélez Colon on three occasions, restating her disability and accentuating that all of her medical appointments are in the "San Juan area."   Docket No. 12, at ¶¶ 22 and 23.

On or around March 20, 2012, Sonia Vélez Colon released Plaintiff from her designation as President of the Local Commission of Humacao.

On or around March 23, 2012, Plaintiff emailed Hon. Judge Hernández Denton about her request to transfer to the Carolina Superior Court.   In said email, she emphasized that her

condition was incurable and that there were several unfilled judicial positions in Carolina.

On or around July 20, 2012, Sonia Vélez Colon emailed Plaintiff and requested that she resubmit all of her medical evidence pertaining to her reasonable accommodation request.

On or around August 6, 2012, Plaintiff once again emailed Hon. Judge Hernández Denton about her reasonable accommodation request, emphasizing that her life has become more onerous since becoming a widow, as she now has to take care of all the household necessities on her own.  She further accentuated that there were vacancies in the Carolina Superior Court.

On that same date, Judge Hernández Denton emailed Plaintiff and informed her that all of her of prior messages had been sent to the attention of Sonia Vélez Colon.  He asserted that a decision would be reached once Plaintiff had resubmitted her medical information.

On September 5, 2012, Plaintiff submitted to Sonia Vélez Colon a new medical certification from her rheumatologist, Salvador Vilá, M.D., via email justifying her request for reasonable accommodations.  In short, Dr. Vilá emphasized that a transfer to Carolina would suit Plaintiff well, as her body would have more time to rest.

On or about March 1, 2013, Plaintiff was transferred to the San Juan Superior Court by administrative order.  At the time,

5

there were six (6) vacancies in Carolina, all of which were assigned to newly appointed judges. On March 11, 2013, Plaintiff filed an administrative complaint before the Equal Employment Opportunity Commission ("EEOC") who, on March 21, 2013, issued a Letter of Determination ordering the Office of Courts Administration to provide Plaintiff with reasonable accommodations by no later than June 27, 2013. No such action was taken.

In the meantime, Plaintiff continued presiding the Court of Minors and Child Abuse and the San Juan Juvenile Drug Court. Plaintiff's commute continued affecting her health, forcing her to request flexible work time from Defendant Hon. Isabel Llompart Zeno. This request was denied.

On May 12, 2014, the EEOC issued Plaintiff a Right to Sue Letter.

On or about June 30, 2014, Plaintiff was reassigned to Civil Court in Room 902. At the time, Plaintiff had been presiding over the Court of Minors and Child Abuse for four years and had become well versed in the nature of said proceedings. Plaintiff had requested not to be reassigned to a different courtroom, as any stressful change could worsen her medical condition. On that same date, Plaintiff sent an email to Sonia Vélez Colon asking to be reassigned to the Court of Minors and Child Abuse.

Plaintiff and Sonia Vélez Colon exchanged emails on July 9 and 10, 2014, wherein Sonia Vélez Colon indicated that she would call her, but never did.

Around that same time, Plaintiff sent a request to Defendant Hon. Isabel Llompart Zeno regarding her law clerk. In essence, Plaintiff requested that her prior law clerk be reassigned with her to Courtroom 902. The request was denied.

Since her transfer to Courtroom 902, Plaintiff has been assigned more cases than originally anticipated, some of which have been highly contentious. In addition, Plaintiff's courtroom does not have air-conditioning. Hence, Plaintiff's medical condition has taken yet another turn for the worse, as she is suffering from too much stress, anxiety, depression, and severe fatigue.

On December 31, 2014, Defendants filed a *Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)* (Docket No. 15) arguing, *inter alias*, that individual capacity suits under ADA are not cognizable, that Defendants are shielded by the doctrine of sovereign immunity, and that Plaintiff is not entitled to injunctive relief. Defendants assert that part of Plaintiff's ADA claim is time-barred, that Plaintiff has failed to show that she is a protected individual under the law, and that her transfer to the San Juan Superior Court was not unreasonable.

On February 6, 2015, Plaintiff filed its opposition to Defendants' motion (Docket No. 20). Therein, Plaintiff concedes that there is no personal or individual liability under Title I of the ADA, thereby precluding any cause of action against state agents in their personal capacity. Plaintiff further acknowledges that the doctrine of sovereign immunity in disability discrimination causes of action under Title I of ADA precludes monetary damages against the state, thereby also shielding individual defendants in their official capacity from an adverse monetary judgment under the ADA. However, Plaintiff maintains that she is entitled to monetary damages under Puerto Rico law.

Notwithstanding, Plaintiff strenuously argues that she is a disabled individual under the ADA as a result of her Fibromyalgia condition and that she is qualified to perform her job functions. In addition, Plaintiff contends that Defendants have failed to satisfy their burden of showing that Plaintiff's reasonable accommodation request would constitute an undue hardship on the judicial system. Lastly, Plaintiff avers that sufficient facts have been pleaded to support her retaliation claim.

## II. STANDARD OF REVIEW FOR MOTIONS TO DISMISS

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).
Under *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), a
plaintiff must "provide the grounds of his entitlement [with]
more than labels and conclusions." *See Ocasio-Hernandez v.
Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) ("in order to
'show' an entitlement to relief a complaint must contain enough
factual material 'to raise a right to relief above the
speculative level on the assumption that all the allegations in
the complaint are true (even if doubtful in fact).')(quoting
*Twombly*, 550 U.S. at 555) (citation omitted). Thus, a
plaintiff must, and is now required to, present allegations that
"nudge [his] claims across the line from conceivable to
plausible" in order to comply with the requirements of Rule
8(a). *Id.* at 570; *see e.g. Ashcroft v. Iqbal*, 556 U.S. 662
(2009).

When considering a motion to dismiss, the Court's inquiry
occurs in a two-step process under the current context-based
"plausibility" standard established by *Twombly*, 550 U.S. 544,
and *Iqbal*, 556 U.S. 662. "Context based" means that a Plaintiff
must allege sufficient facts that comply with the basic elements
of the cause of action. *See Iqbal*, 556 U.S. at 677-679
(concluding that plaintiff's complaint was factually
insufficient to substantiate the required elements of a *Bivens*
claim, leaving the complaint with only conclusory statements).

First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Iqbal*, 556 U.S. at 678. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009) (quoting *Iqbal*, 556 U.S. 678) (quoting *Twombly*, 550 U.S. at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it

has not 'show[n]' 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 679-80 (citing *Twombly*, 550 U.S. at 567). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio-Hernandez*, 640 F.3d at 12, (citing *Iqbal*, 556 U.S. 679).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 556); *Ocasio-Hernandez*, 640 F.3d at 12 (citing *Iqbal*, 556 U.S. 679); *see Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.")(internal quotation marks omitted); *see Ocasio-Hernandez*, 640 F.3d at 12 (citing *Twombly*, 550 U.S. at 556)("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible,

11

[but] not a merely conceivable, case for relief." *Sepúlveda-Villarini*, 628 F.3d at 29.

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st Cir. 2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596; *see Iqbal*, 556 U.S. at 681("To be clear, we do not reject [] bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *see Mendez Internet Mgmt. Servs. v. Banco Santander de P.R.*, 621 F.3d 10, 14 (1st Cir. 2010) (The *Twombly* and *Iqbal* standards require District Courts to "screen[] out rhetoric masquerading as litigation."). However, merely parroting the elements of a cause of action is insufficient. *Ocasio-Hernandez*, 640 F.3d at 12 (citing *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009)).

The First Circuit recently outlined two considerations for district courts to note when analyzing a motion to dismiss. *García-Catalán v. United States*, 734 F.3d 100, 104 (1st Cir. 2013). First, a complaint modeled on Form 11 of the Appendix of the Federal Rules of Civil Procedure which contains sufficient facts to make the claim plausible is ordinarily enough to surpass the standard prescribed under *Twombly-Iqbal*. *Id.* at 104. Second, district courts should accord "some latitude" in cases where "[a] material part of the information needed is likely to be within the defendant's control." *Id.* (more latitude is appropriate in cases where "it cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would have any information about" the event that gave rise to the alleged injury.)(internal citations and quotations omitted).

### III. LEGAL ANALYSIS

#### A. ADA-Reasonable Accommodation Request

Defendants aver that Plaintiff is not entitled to injunctive relief as she has failed to show that she is covered under the ADA and that her transfer to the Superior Court of San Juan was insufficient to satisfy her reasonable accommodation request. Further, Defendants stress that part of Plaintiff's claim is time-barred, as she failed to file an employment-discrimination charge with the EEOC within one hundred and

eighty days (180) days of several alleged discriminatory events. We address each argument in turn.

### *Are Part of Plaintiff's Claims Time-Barred?*

Absent special circumstances, a plaintiff filing a federal suit under Title I of the ADA must first comply with the administrative procedures set forth in Title VII. *Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275 (1st Cir. 1999). In order to exhaust administrative remedies, a plaintiff must file a charge either with the EEOC or an appropriate state or local agency, within the prescribed time limits. *Id*. at 278; 42 U.S.C. § 2000e-5(e).

Under the ADA, "a plaintiff must file an employment-discrimination charge with the EEOC within 300 days of the alleged discrimination." *Rivera-Rodriguez v. Frito Lay Snacks Caribbean, a Div. of Pepsico Puerto Rico, Inc.*, 265 F.3d 15, 21 (1st Cir. 2001), abrogated on other grounds by *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Because Puerto Rico is a "deferral" jurisdiction, the employment-discrimination charge must be filed at the EEOC within 300 days of the alleged unlawful conduct. *Frederique-Alexandre v. Dept. of Natural and Environmental Resources*, 478 F.3d 433, 437 (1st Cir. 2007).

Defendants, without citing case law, would lead us to believe that the 300-day filing period only applies to agencies or instrumentalities of the Commonwealth of Puerto Rico that

operate as a private business or enterprise. However, ample case law from this district clearly establishes that the 300-day filing period applies to the instrumentalities or agencies of the Commonwealth of Puerto Rico. *See Frederique-Alexandre*, 478 F.3d at 437; *Garcia-Hicks v. Vocational Rehab. Admin.*, 25 F. Supp. 3d 204, 208 (D.P.R. 2014); *Sanchez-Arroyo v. Dep't of Educ. of Puerto Rico*, 842 F. Supp. 2d 416, 431 (D.P.R. 2012). Finding that none of Plaintiff's claims are time-barred, the Court now proceeds to examine the plausibility of Plaintiff's reasonable accommodation claim.

### *Reasonable Accommodation Claims Under ADA*

Under the ADA, an employer is prohibited from "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless the covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the entity's business." *Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 102 (1st Cir. 2007)(citing 42 U.S.C. § 12112(b)(5)(A)). In order to succeed on a discrimination claim based on failure to provide reasonable accommodation, a plaintiff must prove that: (1) he is disabled within the meaning of the ADA; (2) he was able to perform the essential functions of the job with or without a reasonable accommodation; and (3) the defendant, knowing of

plaintiff's disability, failed to reasonable accommodate it. *Id.* (quoting *Rocafort v. IBM Corp.*, 334 F.3d 115, 119 (1st Cir. 2003)). Nevertheless, at the motion to dismiss stage, the Court shall employ the aforementioned standard flexibly, as no single allegation must establish a particular element provided that the allegations in the complaint make the reasonable accommodation claim plausible. *Garayalde-Rijos v. Municipality of Carolina*, 747 F.3d 15, 24 (1st Cir. 2014)("The plausibility standard governs on a motion to dismiss. So, '[n]o single allegation need [establish] ... some necessary element [of the cause of action], provided that, in sum, the allegations of the complaint make the claim as a whole at least plausible.'")(quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 14-15 (1st Cir. 2011)).

### i. Is Plaintiff Disabled?

The ADA defines the term "disability" in one of the three ways: (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) "a record of such an impairment;" or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1). The term "major life activities" includes, but is not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

16

Additionally, substantial limitations in major bodily functions, such as "functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions," entitle an individual to disability status.  42 U.S.C. § 12102(B).

The determination of whether or not a plaintiff has a disability must be made on a case-by-case basis.  *See Calero-Cerezo v. U.S. Dept. Of Justice*, 355 F.3d 6, 20 (1st Cir. 2004). In so doing, courts normally consider three questions: (1) Does the plaintiff suffer a physical or mental impairment?; (2) Was the "life activity" limited by plaintiff's impairment "major"?; and (3) Did plaintiff's impairment substantially limit plaintiff's identified major life activity?  *Id*. (citing *Bragdon v. Abbott*, 524 U.S. 624, 630-31 (1998)).  Looking at the factual assertions outlined by the Plaintiff in the complaint, which the Court must accept as true, the Court finds that the answer to all three questions is obviously in the affirmative.  We briefly explain.

With regards to the first question, it is uncontested that individuals diagnosed with Fibromyalgia suffer, in the majority of circumstances, a physical impairment.  *See Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138 (2d Cir. 2002)(holding that an individual diagnosed with Fibromyalgia and chronic fatigue syndrome was disabled for purposes of the ADA).  In the

complaint, Plaintiff asserts that, as a result of her condition, she suffers from chronic pain and fatigue, lack of stamina, severe headaches, and pain in her neck, back, shoulder, legs, and feet. Furthermore, her rheumatologist, Dr. Salvador Vilá, has certified that Plaintiff suffers from the aforementioned symptoms as a result of her medical condition. Hence, a reasonable factfinder could easily determine that she suffers a qualified physical impairment.

Turning to the second question in our inquiry, the Court finds that the "life activities" limited by Plaintiff's Fibromyalgia are "major." A "major life activity" is an activity that is of central importance to an individual's daily life. *See Calero-Cerezo*, 355 F.3d at 21. Many of the activities enumerated by Plaintiff in the complaint have been recognized as "major," including sleeping and concentration. *See Id.* (citing *Criado v. IBM Corp.*, 145 F.3d 437, 442-43 (1st Cir. 1998); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 923 (7th Cir. 2001); *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 155 (1st Cir. 1998); and *Whitney v. Greenberg, Rosenblatt, Kull & Bitsoli, P.C.*, 258 F.3d 30, 33 n. 4 (1st Cir. 2001)).[1] Hence, the Court finds that a reasonable jury could conclude that Plaintiff's Fibromyalgia limited a "major" life activity.

---

[1] The Court notes that working, in and of itself, may be considered a major life activity for purposes of the ADA. *See Calero-Cerezo*, 355 F.3d at 21.

18

Turning to the third and final question in our required inquiry, the Court finds that a reasonable factfinder could conclude that Plaintiff's major life activities were "substantially" limited.   Here, Plaintiff posits that her concentration, sleep, and stamina, among other things, have been severely impacted due to her medical condition.   This, in turn, causes her substantial pain and chronic fatigue, which negatively impacts her life on a daily basis.

Accordingly, the Court finds that Plaintiff is a "disabled" individual under the ADA.   We now turn our inquiry to whether she was a "qualified individual," i.e., was she able to perform the essential functions of her job, with or without an accommodation?

### ii.   Is Plaintiff a "Qualified Individual?"

To determine whether an individual is "qualified" under the ADA, a plaintiff must plead, and ultimately prove, that: (1) "she possesses the requisite skill, experience, education, and other job-related requirements for the position;" and (2) she is able to perform the position's essential functions with or without reasonable accommodation." *Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 32-33 (1st Cir. 2011)(citing *García-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 646 (1st Cir. 2000)).   An "essential function" is defined as "a fundamental job duty associated with a particular

position," which may extend beyond an individual's skills or experience, "even including such individual or idiosyncratic characteristics as scheduling flexibility." *Calero-Cerezo*, 355 F.3d at 22 (internal citations and quotations omitted).

In the case at bar, Plaintiff holds the position of Superior Judge at the San Juan Court of First Instance, a position for which she has the requisite skill, experience and education. The facts alleged in the complaint demonstrate that Plaintiff served as a Superior Judge in the General Court of Justice in Puerto Rico from 1995-2007, and was reappointed to serve a second term in 2010. She also received excellent performance reviews.

In similar fashion, Plaintiff's pleadings support the proposition that she is able to perform the essential functions of her position with or without reasonable accommodation. Plaintiff was diagnosed with Fibromyalgia in 2001, yet has continued exercising her judicial functions unabated ever since.

Hence, the Court finds that Plaintiff is a "qualified individual" under the ADA. We now turn our inquiry to whether the defendant, knowing of plaintiff's disability, failed to reasonable accommodate it.

### iii. *Did Defendants Fail to Provide Reasonable Accommodation?*

Under the third and final step in our analysis, a plaintiff must demonstrate that the employer was aware of the employee's

disability and refused to provide a requested reasonable accommodation. *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 264 (1st Cir. 1999). If a plaintiff establishes that the employer, with knowledge of the disability, failed to provide reasonable accommodations, the burden shifts to the defendant to show that the proposed accommodation would pose an undue hardship. *Id.*

A reasonable accommodation may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position ... and other similar accommodations." 42 U.S.C. § 12111(9)(B). Additionally, a plaintiff must show "not only that the proposed accommodation would enable her to perform the essential functions of her job, but also that, at least on the face of things, it is feasible for the employer under the circumstances." *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 259 (1st Cir. 2001).

Once a plaintiff makes this showing, the defendant may make a showing of undue hardship by producing "at least some modicum of evidence showing that the requested accommodation would be a hardship, financial or otherwise." *Calero-Cerezo*, 355 F.3d at 23.

In the instant case, it is uncontested that the Defendants were aware of Plaintiff's disability. However, the issue of whether Defendants failed to provide a reasonable accommodation

to Plaintiff is not so black and white. Plaintiff avers that her transfer from Humacao to the Court of First Instance in San Juan did not constitute a reasonable accommodation. She posits that a reasonable accommodation would have been to transfer her to Carolina, her home town, where there were several judicial vacancies. Conversely, Defendants argue that the municipality of San Juan is adjacent to Carolina and only a short distance from Plaintiff's home. They also stress that an employer need not provide the best accommodation to an employee, only a reasonable one. Hence, since Plaintiff lived near San Juan and had indicated on a number of occasions that her medical appointments were in San Juan, the accommodation provided was reasonable. Although the Court notes that a jury might very well find Defendants' proposition to be meritorious, it would be inappropriate at this stage of the proceedings for the Court to make that determination which ultimately belongs to the jury. The complaint shows that Plaintiff requested a transfer to Carolina in 2010, that several positions became open in Carolina since her request, and that Defendants failed to transfer her to her home municipality. These facts, in and of themselves, preclude the Court from granting Defendants' request for dismissal at this stage of the proceedings as a matter of law, since a jury may provide weight to the facts as stated above. Here, the Court must take all allegations as true. *See Iqbal*,

556 U.S. at 678 (The Court must "accept as true all of the allegations contained in a complaint.").

Furthermore, Defendants have failed to establish that they would suffer undue hardship by acquiescing to Plaintiff's request.  Should there have in fact been unfilled judicial positions in Carolina, a factfinder might be hard-pressed to find that providing the reasonable accommodation request would be a hardship, economic or otherwise.

Accordingly, the Court finds that Plaintiff has plead sufficient facts to nudge her ADA reasonable accommodation claim past the motion to dismiss stage under the "plausibility" standard.  Hence, Defendants' *Motion to Dismiss* (Docket No. 15) is hereby **DENIED** on these grounds.[2]

### B. Retaliation under ADA

To establish a prima facie case for retaliation under ADA, a plaintiff must plead, and ultimately prove, that: (1) she was engaged in protected conduct; (2) suffered an adverse employment action; and (3) the adverse employment action suffered is

---

[2] The Court emphasizes that the Hon. Liana Fiol Matta, Chief Justice of the Supreme Court of Puerto Rico,  is a named defendant in the case at bar solely for purposes of injunctive relief.  The allegations in the complaint demonstrate that the Hon. Judge Fiol Matta clearly delegated Plaintiff's requests to the Hon. Isabel Llompart Zeno and Hon. Sonia I. Velez Colon. However, since Plaintiff is not seeking monetary damages under federal law, the remaining federal case as to the Hon. Judge Fiol Matta pertains to claims for equitable relief, wherein the Chief Justice is a necessary party. *See Ex Parte Young*, 209 U.S. 123 (1908)(Prospective injunctive relief as an equitable remedy against defendants in their official capacity is not barred by the Eleventh Amendment); *Mills v. State of Me.*, 118 F.3d 37, 54 (1st Cir. 1997).  Additionally, the Court notes that the Hon. Judge Federico Hernandez Denton, former Chief Justice of the Supreme Court of Puerto Rico, also delegated the resolution of Plaintiff's requests.

causally linked to the protected conduct undertaken by plaintiff. *Carmona-Rivera v. Puerto Rico*, 464 F.3d 14, 20 (1st Cir. 2006)(citing *Noviello v. City of Boston*, 398 F.3d 76, 88 (1st Cir. 2005)). After conducting a thorough analysis of the complaint, the Court finds that Plaintiff has set forth a plausible claim for relief under the ADA's retaliation provision. We explain.

With regards to the first prong, Defendants do not contest that Plaintiff was engaged in protected conduct, as she requested to be transferred to the Carolina Superior Court on multiple occasions and filed a claim with the EEOC after her reasonable accommodation requests were not met.

With regards to the second prong, Plaintiff alleges that her transfer requests went unheeded, her work was monitored more closely, she was assigned more duties, asked to preside over an additional courtroom, denied the use of the same law clerk previously assigned to her, and received substantially more cases that originally agreed upon with Defendants. Defendants allege that Plaintiff's transfer from the Humacao Superior Court to the San Juan Superior Court does not constitute an adverse employment action, as the San Juan Superior Court is substantially closer to Plaintiff's residence in Carolina. While Defendants' contention seems reasonable, the Court, at this stage of the proceedings, has to make all reasonable

inferences in favor of the Plaintiff.  Taking all of the facts stated in the complaint as true, a rational factfinder could conclude that Plaintiff was subjected to several adverse employment actions.

Turning to the third prong in our analysis, the Court finds that the majority of the adverse employment actions delineated by Plaintiff are causally linked to her protected conduct. Where, as here, no direct evidence of retaliation is readily available, Plaintiff may supply circumstantial evidence, such as the closeness in time between the occurrence of the protected activity and the adverse employment action, known as temporal proximity, to help satisfy the third element. *See Calero-Cerezo*, 355 F.3d at 25 (being "discharge[d] soon after the plaintiff engages activity specifically protected by ... Title VII ... 'is indirect proof of a causal connection between the firing and the activity because it is strongly suggestive of retaliation.'")(quoting *Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 110 (1st Cir. 1988)).

However, the Supreme Court has stated that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close.'"  *Calero-Cerezo*, 355 F.3d at 25 (quoting *Clark County*

25

*Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)).   In fact, the First Circuit has held that a "several month gap cannot alone ground an inference of a causal connection between a complaint and an allegedly retaliatory action."   *Ahern v. Shinseki*, 629 F.3d 49, 58 (1st Cir. 2010).

Turning to the facts alleged in the complaint, Plaintiff was reassigned to Civil Court in Room 902 on June 30, 2014, less than two months after the EEOC issued Plaintiff a Right to Sue Letter.   At the time, Plaintiff had been presiding over the Court of Minors and Child Abuse for four years and had become well versed in the nature of said proceedings.   Thus, she had requested to remain in said courtroom, as any stressful change could worsen her medical condition.   On that same date, Plaintiff sent an email to Sonia Vélez Colon asking to be reassigned to the Court of Minors and Child Abuse.

Plaintiff and Sonia Vélez Colon exchanges emails on July 9 and 10, 2014, wherein Sonia Vélez Colon indicated that she would call her, but never did.

Around that same time, Plaintiff sent a request to Defendant Hon. Isabel Llompart Zeno regarding her law clerk.   In essence, Plaintiff requested that her prior law clerk be reassigned with her to Courtroom 902.   The request was denied.

Since her transfer to Courtroom 902, Plaintiff claims that she has been assigned more cases than originally anticipated,

some of which have been highly contentious.[3]   In addition, Plaintiff's courtroom does not have air-conditioning. As a result, Plaintiff's medical condition has worsened, as she is suffering from too much stress, anxiety, depression, and severe fatigue.

These purported facts demonstrate that Plaintiff's conditions of employment were adversely affected less than two months after Plaintiff was granted a Right to Sue Letter.   She was transferred from a courtroom she had been presiding for four years to a civil courtroom, was assigned more cases than had been previously been agreed upon, and was denied her request to work with her previous law clerk.   Furthermore, the courtroom she was transferred to lacked air-conditioning, which worsened her physical condition.

Accordingly, the Court finds that Plaintiff has plead sufficient facts to nudge her ADA retaliation claim past the motion to dismiss stage.   Hence, Defendants' *Motion to Dismiss* (Docket No. 15) is hereby **DENIED** on these grounds.

### C. Supplemental State Law Claims

Because federal claims still remain in the case at bar, the Court will refrain from assessing Plaintiff's supplemental state

---

[3]   The Court notes that legal matters are contentious in nature.   As such, Plaintiff cannot reasonably expect to preside over a courtroom where no contentious matters arise.

law claims at this time. *See Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1176-77 (1st Cir. 1995).

### IV. CONCLUSION

For the aforementioned reasons, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendants' *Motion to Dismiss* (Docket No. 15). The following claims are **DISMISSED WITH PREJUDICE:**

1. Plaintiff's claims under Title I of the ADA against the Defendants in their personal or individual capacity; and

2. Plaintiff's monetary claims under Title I of the ADA.

However, Plaintiff's claim under Title I of the ADA for injunctive relief, its retaliation claim under Title IV of the ADA, and its substantive state law claims remain viable causes of action.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of August, 2015.

s/ Daniel R. Dominguez

DANIEL R. DOMINGUEZ
U.S. DISTRICT JUDGE